UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RAELENE C.

          Plaintiff,

v.

ANDREW M. SAUL,
Commissioner of Social Security,

          Defendant.

CASE NO. C19-5540-MAT

ORDER RE: SOCIAL SECURITY DISABILITY APPEAL

Plaintiff proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, this matter is REMANDED for further administrative proceedings.

## **FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1965.[1] She completed high school and previously worked as a housekeeper and housekeeping laundry worker. (AR 86, 108-09.)

---

[1] Dates of birth must be redacted to the year. Fed. R. Civ. P. 5.2(a)(2) and LCR 5.2(a)(1).

ORDER
PAGE - 1

Plaintiff protectively filed DIB and SSI applications in August 2016, alleging disability beginning July 30, 2015. (AR 239, 256.) The applications were denied at the initial level and on reconsideration. On March 15, 2018, ALJ Rebecca Jones held a hearing, taking testimony from plaintiff and a vocational expert (VE), and plaintiff amended the alleged onset date to November 20, 2015. (AR 76-114.) On June 27, 2018, the ALJ found plaintiff not disabled. (AR 30-39.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on April 22, 2019 (AR 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

## **JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## **DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found plaintiff had worked after the alleged disability onset date, but that the work activity did not rise to the level of substantial gainful activity. At step two, it must be determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's degenerative disc disease of the lumbar spine severe. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found plaintiff's impairments did not meet or equal the criteria of a listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff able to perform light work that does not require climbing ladders, ropes, or scaffolds, no more than occasional

climbing of ramps and stairs, and no more than the occasional ability to stoop, kneel, crouch, and crawl. With that assessment, the ALJ found plaintiff able to perform her past relevant work as a housekeeper and housekeeping laundry worker as that work is generally performed.

If a claimant demonstrates an inability to perform past relevant work, or has no past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. With the assistance of the VE, the ALJ also found plaintiff capable of performing other jobs, such as work as a clerical assistant, general cashier II, and small products assembler.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). *Accord Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015) ("We will set aside a denial of benefits only if the denial is unsupported by substantial evidence in the administrative record or is based on legal error.") Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff argues the medical opinion of a doctor submitted to the Appeals Council warrants remand and that the ALJ erred in rejecting lay evidence and her subjective claims. She also questions, with no further argument, whether the RFC and hypothetical questions to the VE were complete to support the step five finding. Plaintiff requests remand for further administrative proceedings, including a de novo hearing, update of records, re-contacting for medical source

ORDER
PAGE - 3

statements, and medical and vocational expert testimony, adding that an orthopedic medical expert would be particularly useful. The Commissioner argues the ALJ's decision has the support of substantial evidence and should be affirmed.

## Evidence Submitted to Appeals Council

After the ALJ issued the decision, plaintiff submitted additional evidence to the Appeals Council. (AR 2, 8-20, 45-74.) The Appeals Council declined to exhibit the evidence upon concluding it did not show a reasonable probability of changing the outcome of the decision. (*Id*.) Plaintiff disagrees with this conclusion in relation to an opinion from orthopedic surgeon Thomas Gritzka, M.D. (AR 8-16.)

Evidence submitted to the Appeals Council becomes part of the administrative record for the purposes of this Court's review. The Court considers the evidence in reviewing the ALJ's decision for substantial evidence. *See Brewes v. Comm'r of Social Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012) ("[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence.").[2]

Dr. Gritzka examined plaintiff on September 12, 2018 and issued an opinion dated October 2, 2018. (AR 8-16.) He reviewed a number of medical records and outlined findings on examination as including, *inter alia*, tenderness to palpation over right posterior iliac spine and

---

[2] Plaintiff argues the opinion of Dr. Gritzka supports a remand under sentence four or, alternatively, sentence six of 42 U.S.C. § 405(g). Under sentence four, a court may remand with a judgment affirming, modifying, or reversing the decision of the ALJ. 42 U.S.C. § 405(g). Under sentence six, a court may remand for consideration of "new evidence which is material" and where there is "good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id*. In this case, while not exhibited, the Appeals did consider the new evidence in reaching the conclusion it did not show a reasonable probability of changing the outcome of the decision. (AR 2.) As such, the Court, like the Commissioner, considers the evidence pursuant to sentence four.

ORDER
PAGE - 4

upper sacroiliac joint, the ability to walk without a limp or list, walk on her tiptoes and heels and do a full deep knee bend, reduced lumbar flexion and extension and lateral lumbar flexion, full strength throughout both lower extremities, pain with internal and external rotation of the right hip, and other findings of pain with hip flexion, worse on the right than the left. (AR 8, 12-13.) He diagnosed (1) chronic lumbosacral sprain superimposed on L2-3, traumatic degenerative disc disease and unstable spondylolisthesis, (2) right sacroiliac joint derangement, and (3) right femoral acetabular impingement, and described the second and third of these diagnoses as "most likely to be currently contributing to the examinee's symptomatology or causing her functional impairment." (AR 14.)

Dr. Gritzka opined that, based on his review of medical records and imaging reports, the examination, and his expertise, plaintiff had been unable to perform even sedentary work on a regular or sustained basis, five days a week, and that either a sacroiliac joint derangement or a femoral acetabular labral tear or symptomatic osteoarthritis of the hip "would prohibit her from sitting or doing even sedentary work." (AR 14-15.) He stated: "Individuals with significant sacroiliac joint injuries and femoral acetabular impingement syndromes do not tolerate prolonged sitting." (AR 15.) He estimated plaintiff would be able to stand and walk on level ground for fifteen minutes at a time, sit for approximately thirty minutes before having to change positions, and lift about ten pounds on an occasional basis. He found plaintiff limited to a total of sitting about four hours in an eight-hour day and standing or walking about two hours per day, and lifting five pounds frequently and ten pounds occasionally. Plaintiff also needed unscheduled breaks intermittently throughout the day, for about fifteen minutes at a time, to lie down or recline. Dr. Gritzka found plaintiff's complaints reasonable and credible in light of the diagnoses, adding that, while the diagnosis is "not yet completely defined[,]" plaintiff "does, however, have some physical

findings consistent with femoral acetabular impingement syndrome which have not been evaluated or treated at this time." (*Id*.) He stated that, if plaintiff attempted even sedentary work, her combination of impairments would probably have resulted in absenteeism about four days per month, and plaintiff would have "off task" behavior and be unable to concentrate due to her pain, specifically her buttock and to a greater extent her right hip pain. (*Id*.) He opined plaintiff had been unable to work since November 20, 2015.

Plaintiff asserts the evidence from Dr. Gritzka likely would change the outcome of this case. She points to the fact Dr. Gritzka established more severe impairments than the ALJ, including two impairments – sacroiliac joint derangement and femoral acetabular impingement syndrome – the ALJ did not consider, as well as his identification of new limitations, including additional breaks to lie down and four absences per month.

The Commissioner denies the evidence from Dr. Gritzka undermined the substantial evidence support for the ALJ's decision. The Commissioner notes that, while the ALJ did not include the new diagnoses at step two, both conditions are related to plaintiff's back and hip complaints and the ALJ fully considered those complaints at step four. (*See* AR 34.) *See also Lewis v. Astrue*, 489 F.3d 909, 911 (9th Cir. 2007) (failure to list impairment as severe at step two harmless where limitations considered at step four). The Commissioner rejects the contention regarding additional limitations identified by Dr. Gritzka, asserting the ALJ considered and found unreliable similar opinions of limitations upon finding them inconsistent with the evidence. The Commissioner notes, as an example, the ALJ's rejection of the opinion of Dr. Brent Packer, M.D., that plaintiff would be limited in her ability to maintain regular work attendance and perform postural activities. (AR 36, 476.)

Plaintiff, in reply, states Dr. Gritzka identified evidence of additional impairments causing

loss of functioning and range of motion and movement, not just increased symptoms. She argues the additional functional deficits identified by Dr. Gritzka undermine the ALJ's decision by both adding an objective, clinical basis for a further reduced RFC and supporting plaintiff's subjective claims. The Court, for the reasons set forth below, finds further proceedings necessary.

In July 2016, Dr. Packer found plaintiff able to perform sedentary level work, with only moderate limitations in two categories – postural restrictions and performing activities within a schedule, maintaining regular attendance, and being punctual. (AR 486.) The limitation to sedentary work included the ability to lift ten pounds maximum, frequently lift or carry small articles, sit for most of the day, and walk or stand for brief periods.

The ALJ assigned the opinion of Dr. Packer little weight. (AR 36.) She noted Dr. Packer did not have the benefit of examining plaintiff, that his opinion appeared to be solely based on review of certain 2016 records, and that he did not consider other evidence in the record. She found the opinion inconsistent with other records showing plaintiff demonstrates a normal gait, is able to engage in heel and toe walking without difficulty, and presents in no acute distress. (*Id.* (citing AR 497, 500, 549, 602, 616, 621, 625, 629, 641, 669, 704).) She noted inconsistency with the opinions of Drs. Greg Saue and Guillermo Rubio, two State agency medical consultants who had access to additional records in rendering their opinions, in November 2016 and January 2017 respectively, that plaintiff could perform light work and frequently engage in all postural activities, but is unlimited in balancing. (*See* AR 129-130, 140-41.) Finally, noting there were no allegations of psychological impairments, the ALJ found Dr. Packer's opinion of difficulty performing activities within a schedule and maintaining regular attendance unsupported even by plaintiff's allegations.

Unlike Drs. Packer, Saue, and Rubio, Dr. Gritzka examined plaintiff. (*See* AR 8-9.) The

ORDER
PAGE - 7

ALJ did not have a medical opinion from an examining or treating provider to consider and was limited to consideration of the opinions from the three non-examining doctors. (*See* AR 36.) While Dr. Gritzka did not examine plaintiff until two-and-a-half months after the ALJ issued her decision, he did relate his opinions back to the time period considered by the ALJ. (*See* AR 8, 15, 39.) Dr. Gritzka also, unlike Dr. Packer, had access to a substantial number of medical records, including records from examining and treating providers not available at the time of review by Drs. Saue and Rubio. (*See, e.g.*, AR 8-9, 640-41 (Dr. Lamar Ruppenthal, on June 29, 2017, found both paraspinal tenderness and spasm with myofascial trigger points and increase in axial lower back pain with pelvic rocking, knees to chest and right greater than left hip flexor pain with related weakness; identifying impression of "chronic lower back pain, severe L2-3 degenerative disc disease, right L5 radiculopathy, lumbar myofascial pain/facet syndrome and potential right SI J dysfunction."); AR 708 (Dr. Yavari Rad, on January 8, 2018, stated: "The patient's presentation is complex and seems to be multifactorial. Her pain is chronic and started in 2015. . . . Her pain across lumbar area seems to be related to L2-3 DDD, facet arthropathy or segmental instability. Pain in the right lumbosacral junction gluteal area could be related to spondylosis or SI joint. Piriformis syndrome is on differential diagnosis as well. . . . ").) Dr. Gritzka also found plaintiff more physically limited than opined by Dr. Packer and specifically tied assessed limitations in absenteeism, off-task behavior, and inability to concentrate to pain from plaintiff's physical impairments. (*See* AR 15.)

The Court, in sum, finds the evaluation from Dr. Gritzka to undermine the substantial evidence support for the ALJ's decision. This matter is subject to remand for further consideration of the medical record, including the evidence submitted to the Appeals Council.

/ / /

ORDER
PAGE - 8

<u>Other Assignments of Error</u>

Plaintiff also avers error in the consideration of a lay statement and her symptom testimony, and questions the impact of errors on steps four and five. Finding this matter properly remanded for the reason stated above, the Court declines to address these contentions in detail. The Court does, however, find the necessary specific, clear, and convincing reasons for discounting plaintiff's symptom testimony, (AR 34-36); *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014), and germane reasons in relation to the lay statement from Kim Shelley (AR 36); *Smolen v. Chater*, 80 F.3d 1273, 1288-89 (9th Cir. 1996). However, assessment of the evidence from Dr. Gritzka, including new diagnoses, necessitates further consideration of this matter beginning at step two and thereby implicates all subsequent steps in the sequential evaluation. The ALJ should therefore reassess both symptom and lay testimony as necessary on remand. The ALJ should also, in so doing, consider any evidence associated with plaintiff's ability to sit for extended periods in a car, including any steps taken to reduce symptoms. (*See, e.g.*, AR 476 ("Pain improves with changing positions, keeping active, and reclined seat in car.")); *Tackett v. Apfel*, 180 F.3d 1094, 1103 (9th Cir. 1999) (road trip to California not sufficient to counter physicians' opinions claimant needed to shift positions every thirty minutes or so, where there was an absence of information as to his positioning in the car and the frequency and duration of rest stops).

## **CONCLUSION**

For the reasons set forth above, this matter is REMANDED for further administrative proceedings.

DATED this <u>2nd</u> day of March, 2020.

Mary Alice Theiler
United States Magistrate Judge

ORDER
PAGE - 9